No. 49,238

STATE OF KANSAS, *ex rel.,* CURT T. SCHNEIDER, Attorney General, *Appellants,* v. JERRY HILL d/b/a ECONO DIVORCE SERVICE, INC., *Appellee.*

(573 P.2d 1078)

Opinion filed January 21, 1978.

*Philip A. Harley,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *Daniel L. Watkins,* assistant attorney general, were with him on the brief for the appellant.

*Kenneth M. Carpenter,* of Topeka, argued the cause, and *John Valentine Wachtel IV,* also of Topeka, was with him on the brief for the appellee.

*Donald E. Lambdin,* of Lambdin, Kluge & Moshier, Chartered, of Wichita, was on the brief *amicus curiae* for the Wichita Bar Association.

*Per Curiam:* This is an appeal by the State of Kansas from a judgment entered by the district court of Shawnee County, determining that the defendant, Jerry Hill, is not engaged in the unauthorized practice of law, and denying injunctive relief.

The district court's order, omitting formal portions, is as follows:

"The action is brought by the state, on the relation of the Attorney General, against the defendant seeking a declaratory judgment determining that the defendant is engaged in the unauthorized practice of law and an injunction against the defendant prohibiting him from doing certain acts in conjunction therewith.

"The facts are not really disputed and may be summarized as follows. The defendant, under a type of franchise arrangement, buys kits for resale purporting to contain all forms needed for the filing and obtaining of a divorce in Kansas, sample forms filled out, and instructions, both written and via tape recording on the use of the kit. Defendant then advertises said kits and sells same at a mark-up. He sells them for $48.00. He has not represented himself to be an attorney and has advised at least some customers that he was not. The tape is played by the defendant to customers to answer their questions and 'sell' them on the kit. Defendant did not participate in the preparation of the kit. The forms or samples are not tailor made for any customer and the customer has the responsibility for completing same. A refund is to be paid if a divorce is not granted due to insufficiencies of the kit. The tape contains a direct 'sales pitch' and encourages people to buy the same and avoid 'high legal fees' of $350.00 to $500.00.

"The court must note that there is little doubt but that many people can get into a great deal of difficulty with a do-it-yourself divorce. This is true of do-it-yourself electricians, home remodelers, plumbers, auto mechanics, health treatments, etc. The kit in question does not even contain the temporary support, custody,

alimony, etc. forms which are the only acceptable forms for same in this Judicial District. Tax consequences of a divorce and many other areas are not adequately dealt with by the kit. However, whether the kit is well-prepared, adequate for purpose intended, or 'worth the money' are not issues in this case. As the Supreme Court said in *State, ex rel., v. Schmitt,* 174 Kan. 581 which is also an unauthorized practice of law case:

" 'We are not concerned with the legal sufficiency of this document nor whether it accomplishes the results claimed for it, and therefore do not review it.'

"If one sells a product that is not fit for its intended purpose, perpetrates a fraud in sales practices, misrepresents products, etc., one may expose himself to various actions, but none of these types of activities are issues in this case. The sole issue before this court in this case is whether or not the defendant engages in or has engaged in the unauthorized practice of law.

"The defendant contends he is selling an inanimate object; to wit; a book. The book is not bound but defendant contends it is still legally a book. In essence, defendant places his activity in the same class as one who would purchase for resale, promote, and resell at a profit the well-known and highly controversial book, 'How to Avoid Probate' by Norman F. Dacey.

"The definition of the authorized practice of law has never been concise as the circumstances in the individual cases defy a simple and direct definitive statement. *State ex rel., v. Perkins,* 138 Kan. 899 states:

" 'One who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law.'

"In the *Schmitt* case, supra, defendant was selling a Trust service for fees up to $3,000.00. The value of the assets of the prospective trust creator had a bearing on the fee. The court found the form for the trust indenture could not cost over $10.00. From the price charged, one could assume that something more than a form was being sold. The court found the defendant personally gave legal opinions as to tax effects and on other complex legal questions to customers and prospective customers.

"111 A.L.R. 19, 125 A.L.R. 1173, and 151 A.L.R. 781 contain exhaustive discussions of the unlawful practice of law. Some of the factors involved as to whether drawing a document is or is not such a practice are if a fee is charged for the drawing of it; whether it is simple or requires legal training, whether such a drawing is incidental to another business. Generally preparing income tax returns and real estate form contracts are held not to be the practice of law. The main general test in unlawful practice of law cases seems to be whether or not an attorney-client relationship exists. That is, whether the person whose conduct is under scrutiny represented or implied he had legal knowledge beyond that of a layman and provided 'professional' assistance to a 'client'. The customer pays for the 'skill', 'special knowledge' or 'expertise' of the seller. There is a personalization of services provided. That is, the customer provides the data or raw material and the 'expert' assembles, compiles, organizes, etc. and using the 'expertise' (real or imagined) provides a legal service.

"In the case at hand the defendant never held himself out as an expert on anything. He has a product to sell and plays a recorded 'sales pitch' that is not made by him but by the maker of the kit. Customer's and prospective customer's

questions are theoretically to be answered by the tape and printed instructions. The defendant personally gives no legal advice. He may encourage customers to listen to the tape and/or buy the kit, but he has no attorney-client relationship with the customers.

"The court hereby finds and concludes on the basis of the evidence that the defendant is not engaged in the unlawful practice of law. This is not, in any way, to mean that the product sold is found to be wholesome, harmless, adequate, worthwhile, useful, etc., but only that the defendant is not practicing law. The injunction is denied. . . ."

CHIEF JUSTICE SCHROEDER, JUSTICE FROMME, and JUSTICE HOLMES would reverse; JUSTICES OWSLEY, PRAGER, and MILLER would affirm.

The judgment of the trial court is therefore affirmed by an equally divided court.

McFARLAND, J., not participating.